Daniel M. Shanley (WBN 41253)
dshanley@shanleyapc.com
SHANLEY, A Professional Corporation
533 South Fremont Avenue, Ninth Floor
Los Angeles, California 90071-1706
Telephone:  (213) 488-4100
Facsimile:   (213) 488-4180

Attorneys for Plaintiff UNITED BROTHERHOOD OF CARPENTERS AND JOINERS OF AMERICA and PACIFIC NORTHWEST REGIONAL COUNCIL OF CARPENTERS

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED BROTHERHOOD OF CARPENTERS AND JOINERS OF AMERICA, an unincorporated association, and PACIFIC NORTHWEST REGIONAL COUNCIL OF CARPENTERS, an unincorporated association,<br><br>                Plaintiffs,<br><br>v.<br><br>KRISTINE COLE, an individual; and KEN ERVIN, an individual,<br><br>                Defendants. | CASE NO.<br><br>COMPLAINT |

## INTRODUCTION

1. This case is another sad chapter in the story of corruption that has plagued the Pacific Northwest Regional Council of Carpenters ("Regional Council"). Based on that corruption, which included vote rigging in the last member ratification vote for a collective bargaining agreement, the Regional Council asked its parent organization, the United Brotherhood of Carpenters and Joiners of America ("UBC") to take over its

leadership.  The Regional Council asked the UBC to investigate and clean up the corruption.  The UBC put the Regional Council under Supervision and has started this process.  In the course of its investigation, the UBC discovered many more instances of wrongdoing and abuse, including the scheme for double pay that is the subject of this suit.

2. Former union officials Ken Ervin and Kristine Cole were involved in a double-dipping pay scheme that cost union members thousands of dollars.

3. Ervin and Cole used their positions of authority in multiple union bodies to seek double compensation for Ervin, including at an overtime rate.  Namely, Ervin was paid to attend meetings that other union bodies were already paying Ervin to attend.  This "double dipping" was a blatant violation of Ervin's and Cole's fiduciary duties as union officials under Section 501(a) of the Labor Management Reporting and Disclosure Act of 1959 ("LMRDA").  29 U.S.C. § 501(a).

4. Ervin was only able to effectuate this scheme because his supervisor and lead, Cole, signed off on and approved his double-dipping pay by the Regional Council—knowing full well Ervin was already getting paid by his local union for the same time.  Cole knew this was double payment.  Not only was she Ervin's supervisor, she too was a local union official in the same local union that was also paying Ervin for the same time, and she was responsible for keeping track of the approved motion authorizing Ervin's payment by the local union.

5. Cole failed to stop and failed to disclose Ervin's double-pay scheme, and instead approved and facilitated it.  On information and belief, the reason Cole facilitated the scheme was because Ervin had previously permitted Cole to receive unearned pay.  Namely, when Cole was building her house and Ervin was her supervisor and lead, Ervin allowed her to build her house on union-paid time.  Ervin covered for Cole during her repeated absences from work while he approved her continued full time pay.  This theft of union time also was a blatant violation of their fiduciary duties as union officials under Section 501(a) of the LMRDA.

COMPLAINT                                                                3

## THE PARTIES

6. Plaintiff United Brotherhood of Carpenters and Joiners of America ("UBC") is an unincorporated voluntary association and a "labor organization" as defined by 29 U.S.C. Section 402(i). UBC maintains an office in Washington D.C. On October 25, 2021, the Regional Council's Executive Board unanimously passed a Resolution inviting the UBC's trusteeship and investigation. Exhibit "A" is a true and correct copy of that Resolution. UBC's investigation, in turn, uncovered the double-pay scheme at issue in this case.

7. Plaintiff Pacific Northwest Regional Council of Carpenters ("Regional Council") is an unincorporated voluntary association and a "labor organization" as defined by 29 U.S.C. Section 402(i). The Regional Council maintains an office in Kent, Washington.

8. Upon information and belief, Defendant Ken Ervin is an individual residing in the state of Washington, and in particular residing in the Western District of Washington. At all relevant times, Ervin was an agent and representative of the Regional Council and an elected officer of his local union, and thus was an officer, agent and/or other representative within the meaning of Section 501 of the LMRDA.

9. Upon information and belief, Defendant Kristine Cole is an individual residing in the state of Washington, and in particular residing in the Western District of Washington. At all relevant times, Cole was an agent and representative of the Regional Council and an elected officer of her local union, and thus was an officer, agent and/or other representative within the meaning of Section 501 of the LMRDA.

## JURISDICTION AND VENUE

10. This Court has original jurisdiction pursuant to 28 U.S.C. Sections 1331 and 1337. *See Serv. Emps. Int'l Union v. Nat'l Union of Healthcare Workers*, 711 F.3d 970, 980 (9th Cir. 2013), *amended on denial of reh'g by* 718 F.3d 1036 (9th Cir. 2013)(federal courts have Section 501 jurisdiction in action brought by union against its former officials).

11. Pursuant to 28 U.S.C. Section 1391, venue is proper in this district. Defendants Ervin and Cole are "residents of the State in which the district is located" and are domiciled within this district. 28 U.S.C. § 1391(b)(1) & (c)(1). This is also the judicial district where "a substantial part of the events or omissions giving rise to the claim occurred[.]" *Id.* § 1391(b)(2).

## STATEMENT OF FACTS

12. Section 501(a) of the LMRDA sets out the fiduciary duties owed by officers of a union under federal law. 29 U.S.C. § 501(a). Under Section 501, union officials "are held to the highest standards of responsibility and ethical conduct in administering the affairs of the union." *Servs. Emps. Int'l Union*, 718 F.3d at 1044.

13. Ervin and Cole each violated their Section 501 fiduciary duties.

14. Ervin was a union representative of the Regional Council. He was paid an hourly wage. The Regional Council precluded Ervin from participating in the affairs of a local union unless it was on his own personal time and so long as it did not interfere with his duties as a Regional Council representative.

15. Despite this restriction, Ervin also held a local union office position. He held the position of financial secretary of a local union.

16. Ervin was paid a local union salary for his position. He was paid for 20 hours of work each month for performing his duties in this local union job.

17. Part of Ervin's local union job included attending the local union's monthly Executive Committee meeting and monthly membership meeting. These meetings typically ranged from 23 minutes to one and a half hours in length.

18. Ervin's Regional Council supervisor was Cole. Cole held the position of Lead Representative. She was responsible for authorizing Ervin's overtime, and for reviewing and approving the actual amount of overtime hours Ervin submitted for payment.

19. Cole was also an officer of the same local union as Ervin. In the local union, Cole held the position of Recording Secretary. Her duties included taking meeting

minutes and overseeing the motions that authorized pay for the local union's officers, including the 20 hours per month that Ervin was paid.

20. The double-dipping scheme Ervin and Cole engaged in went as follows.

21. Ervin attended his local union's monthly Executive Committee and membership meetings.

22. Ervin would request overtime from the Regional Council for attending these local union meetings.

23. Cole would authorize and approve these overtime requests.

24. Cole knew that Ervin was already being paid by the local union to attend these very same meetings. Accordingly, she had actual knowledge that Ervin was being paid twice to attend the meetings.

25. Cole had no authority to approve overtime for her subordinates to attend meetings for which they were already being paid by another organization. As such, any approval of double-pay by Cole was itself improper and unauthorized.

26. For instance, during the month of January 2021, Ervin was paid his 20-hour per month salary by the local union. His paid duties in that role included attending the local union's Executive Committee meeting and membership meeting. On January 27, 2021, the local union had an Executive Committee meeting. As officers, Ervin and Cole attended. The meeting lasted less than 45 minutes. Cole took and signed the minutes.

27. At the same time, Ervin requested to be paid by the Regional Council for one hour of overtime for "local 129 Eboard mtg." Cole approved Ervin's overtime request knowing that he was already being paid by the local union to attend that same meeting.

28. Other examples of double-dipping pay include Ervin requesting 1.5 hours of overtime on December 9, 2020, for attending the local union meeting. Cole approved Ervin's December 9th overtime request knowing that Ervin was already being paid by the local union to attend that same meeting.

29. The same thing occurred in April 2021. Ervin submitted a request for five

hours of overtime for attending the local union meeting that was being held over by virtual videoconference on Zoom.  Again, Cole approved Ervin's April 14, 2021 overtime request knowing that Ervin was already being paid by the local union to attend that same meeting.

30.     As a last example, Ervin submitted an overtime request for attending the local union's Executive Committee meeting that was held on September 22, 2021.  Cole approved Ervin's overtime request knowing that Ervin was already being paid by the local union to attend that same meeting.

31.     Even after the UBC's Supervision began, Ervin and Cole tried to continue their double-dipping pay scheme.  Jim Gleason, the UBC-appointed Supervisor of the Regional Council, required that all overtime requests be first sent to him in writing so he could determine whether such overtime was even necessary.  On November 8, 2021, Cole, as Ervin's Lead, submitted an email to Gleason requesting that Ervin be approved for four hours of overtime work to attend his local union meeting—the same meeting for which he was already being paid a local union salary to attend as a local union officer.

32.     All told, Ervin was improperly double-paid thousands of dollars by the Regional Council.

33.     Cole improperly approved and failed to stop or disclose to the Regional Council or the local union's membership of Ervin's double-pay.

34.     On information and belief, the reason Cole authorized and approved Ervin's improper double-pay theft of union salary was because in the past, when the roles were reversed and Ervin had been Cole's Lead, he had allowed her to build her house on union time.  Cole built her own home herself.  She did not hire a general contractor.  She told Regional Council staff she would build it in only six months' time.  Such a time schedule would have been impossible to meet unless Cole was building her home on union time.

35.     During this six-month period Cole was frequently absent from the office when her job duties required her to be there.

36.     During this six-month period, Ervin authorized Cole to not come to the

COMPLAINT                                                    7

office, knowing that she was home building her house on union time.  Cole was not docked by Ervin for her absences.

37.　Cole's paid absences were not disclosed to the Regional Council and constituted unauthorized theft of union salary.

38.　Ervin's and Cole's self-dealing schemes were undisclosed, unauthorized, and unjustified.

39.　Ervin's and Cole's theft of union salary violated Section 501.  They now need to account for, and pay back all the monies they were improperly paid.

## FIRST CAUSE OF ACTION
## (Breach of LMRDA 29 U.S.C. § 501 Fiduciary Duty)

40.　Plaintiffs UBC and Regional Council incorporate by reference the allegations set forth in paragraphs 1 through 39 above.

41.　Per Section 501 of the LMRDA, officers, and agents of a labor organization "occupy positions of trust in relation to such organization and its members as a group." 29 U.S.C. § 501(a).  Each officer must hold the union's property solely for the benefit of the organization and its members, act in accordance with a Union's governing documents, and refrain from having adverse interests in connection with any transaction involving the union.  *Id*.

42.　Ervin was an agent, representative and employee of the Regional Council, and an officer of his local union, and thus a fiduciary under Section 501(a).

43.　Cole was an agent, representative and employee of the Regional Council, and an officer and agent of her local union, and thus a fiduciary under Section 501(a).

44.　Ervin and Cole violated their Section 501(a) fiduciary duties based on their double-dipping pay scheme.

45.　Ervin's and Cole's Section 501(a) violations caused the Regional Council and its members financial losses in an amount to be determined at trial.

## PRAYER FOR RELIEF

Plaintiffs request the following relief:

1. Judgment against Cole and Ervin in the amount of damages according to proof at trial;

2. Interest at the legal rate on all damages;

3. Attorneys' fees, litigation expenses and costs of this action;

4. An order prohibiting Cole and Ervin from ever holding any Section 501 positions with Regional Council or any of its affiliated local unions; and

5. Such other and further relief as may be warranted and deemed proper by the Court.

DATED: February 7, 2022            SHANLEY, A Professional Corporation

By: _____
Daniel M. Shanley
Attorney for Plaintiffs UNITED
BROTHERHOOD OF CARPENTERS
AND JOINERS OF AMERICA and
PACIFIC NORTHWEST REGIONAL
COUNCIL OF CARPENTERS